## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MORELIA CONSULTANTS, LLC;** | : | **No. 3:10cv432** |
| **THE CHRISTOPHER ENTERPRIZE,** | : | |
| **LLC;** | : | **(Judge Munley)** |
| **CRH NAPLES DEVELOPMENT, LLC;** | : | |
| **and** | : | **(Magistrate Judge Blewitt)** |
| **CHRISTOPHER HILDEBRANT,** | : | |
| **Plaintiffs** | : | |
| **v.** | : | |
| | : | |
| **RCMP ENTERPRISES, LLC;** | : | |
| **UNITED PENN INVESTMENT GROUP,** | : | |
| **LLC;** | : | |
| **THOMAS KRETCHIK;** | : | |
| **CHRISTOPHER M. WARTELLA;** | : | |
| **STANLEY MALINOWSKI, a/k/a Rick** | : | |
| **Malinkowski;** | : | |
| **MICAHEL OLENGINSKI; and** | : | |
| **JEFFREY N. WOYTOWICH,** | : | |
| **Defendants** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

### MEMORANDUM

Before the court are plaintiffs' objections to the report and recommendation of Magistrate Judge William T. Prince (Doc. 64), which proposes the court grant in part and deny in part  defendants' motions to dismiss the complaint.

**Background**

This case arises out of business disputes between the parties.  Defendant RCMP Enterprises, LLC ("RCMP") is a limited liability company located in Pennsylvania.  (Amended Complaint (Doc. 16) (hereinafter "Amend. Complt.") at ¶ 5).  The individual defendants are allegedly "members" of RCMP and hold

themselves out to members of Defendant United Penn Investment Group ("United Penn"), a defunct corporation.  (<u>Id.</u> at ¶ 14).  Plaintiffs allege that RCMP was–and remains–undercapitalized.  (<u>Id.</u> at ¶ 17).  Defendant Kretchik continually provided RCMP with funding, money without which the company would not have been able to operate.  (<u>Id.</u> at ¶ 18).  Plaintiffs contend that the purpose of this undercapitalization was for the individual defendants to avoid liability for RCMP's tortious actions, and for Kretchik to assert control over the rest of the members.  (<u>Id.</u> at ¶ ¶ 19-21).  Indeed, plaintiffs contend that RCMP's corporate existence as a limited liability entity should be ignored and the individual defendants made liable for the company's obligations.  (<u>Id.</u> at ¶ 27).  Likewise, plaintiffs allege that defendants knowingly used United Penn, a dissolved corporate entity, to enter into contracts and incur obligations.  (<u>Id.</u> at ¶ 32).  Plaintiffs allege that the individual defendants should be liable for any of United Penn's obligations.  (<u>Id.</u> at ¶ 38).

Plaintiffs allege that in July 2007 Defendants Malinowski and Wartella, along with Franklind Lea, a consultant, traveled to Cincinnati, Ohio to meet with Plaintiff Christopher Hildebrandt.  (<u>Id.</u> at ¶ 40).  The purpose of this meeting was to solicit Hildebrant's services in the purchase and development of a marina and about thirty acres of land located in Estero, Florida.  (<u>Id.</u>).  This property is referred to by the litigants as the "Weeks Fish Camp."  (<u>Id.</u>).  Malinowski, Wartella and Lind solicited Hildebrant to act as a consultant for RCMP relative to the fishing camp.  (<u>Id.</u> at ¶ 42).  Plaintiffs allege that shortly after this meeting defendants breached their agreement

2

with Franklind Lea and his company, Tactical Financial Consulting.  (Id. at ¶ 41).

This breach led to litigation and eventually a confidential settlement agreement.  (Id.

at ¶ 41).

Soon after the 2007 meeting, Malinowski learned that Hildebrant owned 2325-

square-foot home near the Weeks Fishing Camp.  (Id. at ¶ 42).  Malinowski

approached Hildebrant about renting this home while Malinowski was in Florida

working on the sale and development of the fishing camp.  (Id. at ¶ 43).  Hildebrant

and Malinowski entered into a written lease (the "Cypress Lease") for this property

on September 10, 2007.  (Id. at ¶ 44).  Hildebrant was landlord and Malinowski

tenant on the lease.  (Id.).  The lease covered property located at 8844 Cypress

Preserve Place, Fort Meyers, Florida (the "Premises").  (Id.).  Hildebrant leased the

property because he believed Malinowski, who represented himself as the

"managing member" of RCMP, to possess sound finances and good character..  (Id.

at ¶¶ 45-46).  The lease lasted from November 1, 2007 to December 31, 2008 and

required Malinowski to pay rent in the amount of $2,000 per month if he paid before

the 10th of the month and $2,100 per month if he paid later.  (Id. at ¶ 47).  While this

contract was between Hildebrant and Malinowski, Malinowski expressly rented the

Premises because of its proximity to the fishing camp.  (Id. at ¶ 48).  He intended to

carry out his duties for RCMP related to the camp at the property.  (Id.).

Soon after Malinowski took possession of the premises, Hildebrant became

aware of certain "nefarious" and allegedly unlawful conduct by Malinowski at those

premises.  (Id. at ¶ 49).  When Hildebrant confronted Malinowski and other RCMP

members about this conduct, they told Hildebrant that Malinowski had "'personal

problems'" which led to the behavior.  (Id. at ¶ 50).  During the term of the lease,

however, RCMP and the individual defendants treated the rent payments as a

business expense and not Malinowski's personal expense.  (Id. at ¶ 51).  They

caused the lease payments to be made because they found use of the Premises

beneficial in light of the proximity of the Premises to the Fishing Camp.  (Id. at ¶ 52).

The individual defendants used the Premises for those purposes.  (Id. at ¶ 53).

Indeed, RCMP became involved in issues related to the lease, sometimes making

payments on that lease.  (Id. at ¶ 54).  One check written by RCMP on the lease was

returned for insufficient funds.  (Id. at ¶¶ 55-56).  The defendants should have known

this check would bounce.  (Id. at ¶ 57).  In the end, Malinowski breached the lease

by failing to pay rent and other obligations from March 1, 2008 onward.  (Id. at ¶¶ 59-

60).  Malinowski owes more than $21,000 in back rent and interest, as well as for

substantial damage caused to the premises during his stay.[1]  (Id. at ¶¶ 62-63)).

Plaintiffs contend that Malinowski's damage to the property was intentional.  (Id. at ¶

70).

---

[1]The damage allegedly caused by Malinowski included: "the carpets in each and
every room of the Premises had cigarette burn marks where Malinowski, at this point the
managing member of RCMP, extinguished his cigarettes with wanton disregard for
Hildebrant's property.  In addition, Malinowski extinguished his cigarettes on the furniture
and within the kitchen cabinets and drawers and left the cigarette butts there upon vacating
the Premises."  (Amend. Complt. at ¶ 67).  Plaintiffs contend that Malinowski owes
$42,469.21 for this damage.  (Id. at ¶ 69).

On March 24, 2008, the individual defendants caused Defendant United Penn to enter into a consulting agreement with Plaintiff Christopher Enterprize.  (Id. at ¶ 74).  Christopher Enterprize was to provide "'assistance and guidance for obtaining a loan in the name of United Penn.'" (Id.).  United Penn was defunct at the time this agreement was made.  (Id.).  The defendants represented, however, that United Penn was a validly existing company, a representation that Christopher Enterprize relied upon.  (Id. at ¶ 75).  Defendants promised to pay Christopher Enterprize $100,000 for this assistance, in addition to a minimum payment of $5,000 for any consultations.  (Id. at ¶ 76).  Christopher Enterprize performed its obligation under the consulting contract, but defendants did not pay.  (Id. at ¶ 77).  Plaintiffs allege that the individual defendants convinced Christopher Enterprize to provide this assistance by using "false pretenses, misrepresentations and promises."  (Id. at ¶ 82).  Defendants used mail, e-mail and wires to advance this fraudulent scheme. (Id. at ¶ 83).

On October 17, 2007, Plaintiffs CRH Naples and Christopher Enterprize entered into a term sheet that provided the parameters of a consulting relationship to RCMP relative to the Fishing Camp.  (Id. at ¶ 94).  The $12,000 check defendants used to pay their obligations under this term sheet was returned for insufficient funds.  (Id. at ¶¶ 95-96).  On January 31, 2008 CRH Naples and Christopher Enterprize entered into a consulting agreement with RCMP that replaced the term sheet.  (Id. at ¶¶ 97-98).  The agreement provided that Christopher Enterprize would

be paid $6,000 monthly for consulting services.  (<u>Id.</u> at ¶¶ 98-99).  The agreement was scheduled to last seven months, from January 31, 2008 to August 31, 2008. (<u>Id.</u> at ¶ 99).  The parties signed an addendum to that agreement on August 14, 2008 that provided for an increase in compensation to $10,000 monthly.  (<u>Id.</u> at ¶¶ 100, 102).  The agreement was scheduled to last from September 1, 2008 to September 30, 2010.  (<u>Id.</u> at ¶ 102).  Additionally, Christopher Enterprize was to receive a ten-percent commission "for monetary value brought by the Christopher Enterprize to the benefit of RCMP or the project."  (<u>Id.</u> at ¶ 103).  RCMP paid Christopher Enterprize $10,000 on September 1, 2008 pursuant to the consulting agreement.  (<u>Id.</u> at ¶ 108).  This was the only payment RCMP ever made under the contract.  (<u>Id.</u> at ¶ 109).  RCMP currently owes Christopher Enterprize more than $240,000 under this contract, in addition to unspecified bonus payments.  (<u>Id.</u> at ¶¶ 111-12).

Malinowski's alleged misconduct led to other changes in the consulting agreement.  (<u>Id.</u> at ¶ 104).  Malinowski was removed as managing member of RCMP and replaced by Defendant Kretchik.  (<u>Id.</u> at ¶ 104).  In addition, RCMP acceded to Christopher Enterprize's demand that a paragraph be added to the consulting agreement that held Christopher Enterprize harmless for "any claims that may arise from the actions previously taken by or reliance upon information/documentation provided by, [sic] RCMP's representative Stanley 'Rick' Malinowski."  (<u>Id.</u> at ¶ 105).

Malinowski's poor performance also caused defendants to seek an expanded

role for other consultants in the Fishing Camp project.  (Id. at ¶ 114).  Plaintiff

Hildebrant concluded that he and the other plaintiffs would have to provide more

services under their consulting contract than originally anticipated.  (Id. at ¶ 115).

On September 1, 2008, Plaintiff Morelia Consulting and RCMP and Thomas Kretchik

entered into a consulting agreement.  (Id. at ¶ 116).  In exchange for a $10,000

monthly fee during the two-year period of the agreement, Plaintiff Morelia agreed to

assist RCMP in financing and developing the fish camp project.  (Id. at ¶ 118).

Defendants also agreed to pay Morelia a ten percent commission on "'any monetary

value that is a benefit to [RCMP]."  (Id.).  Defendant Christopher Wartella also

replaced Malinowski under this agreement.  (Id. at ¶ 119).  The parties agreed that

Morelia should be held harmless from any claims arising from Malinowski's conduct.

(Id. at ¶ 120).  RCMP and/or Kretchik made some payments under the consulting

agreement with Morelia, but many of those payments were late.  (Id. at ¶¶ 121-125).

In addition, RCMP and Morelia continue to owe Morelia more than $90,000 under

the consulting contract, in addition to consulting fees.  (Id. at ¶¶ 129-31).

On November 24, 2009, an attorney for RCMP sent plaintiffs a letter.  (Id. at ¶

135).  This letter describes an alleged agreement between RCMP and Morelia dated

September 1, 2008.  (Id. at ¶ 136).  Plaintiffs insist that no such agreement existed.

(Id. at ¶ 137).  The letter claimed that plaintiffs were bound by a non-disclosure and

non-competition agreement contained in the agreement, and threatened the plaintiffs

with enforcement of such agreements.  (Id. at ¶¶ 139-41).  Plaintiffs allege that

defendants threatened such enforcement even though they knew that no such agreements existed.  (Id. at ¶¶ 141-42).   The letter also referenced an escrow agreement between the parties that was no longer in effect.  (Id. at ¶¶ 143-48)

The same attorney sent plaintiffs' counsel another letter on January 13, 2010.  (Id. at ¶ 151).  The letter quoted language from the agreement plaintiffs claim never existed that allegedly pledged plaintiffs to non-compete, non-disclosure, and survival agreements.  (Id. at ¶ 152).  Defendants threatened to use the Federal Bureau of Investigation to enforce this phony agreement, file civil and criminal actions, and seek injunctive relief.  (Id. at ¶ 155).

Plaintiffs contend that defendants actions violated a variety of federal laws, and were pursued as apart of a conspiracy creating liability under the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961, *et seq.*

Plaintiffs initiated this action by filing suit in the Court of Common Pleas of Luzerne County, Pennsylvania.  On February 26, 2010, defendants removed the case to this court.  (See Doc. 1).  Defendants then filed motions to dismiss the complaint.  Plaintiffs responded by filing an amended complaint, which is the subject of the instant motions to dismiss.  The amended complaint contains nineteen counts related to defendants' alleged fraud, breaches of contract, RICO conspiracy, and unjust enrichment.   The magistrate judge issued a report and recommendation proposing that the motions be granted in part and denied in part, and the plaintiffs filed objections, bringing the case to its present posture.

**Jurisdiction**

Plaintiffs bring this suit pursuant to the RICO Act, 18 U.S.C. §§ 1961 *et seq.*
The court therefore has jurisdiction pursuant to 28 U.S.C. § 1331 ("The district courts
shall have original jurisdiction of all civil actions arising under the Constitution, laws,
or treaties of the United States.").  The court has supplemental jurisdiction over
plaintiffs' state-law claims pursuant to 28 U.S.C. § 1367.

**Legal Standard**

In disposing of objections to a magistrate judge's report and recommendation,
*the district court must make* a de novo *determination of those portions of the report*
to which objections are made.  28 U.S.C. § 636 (b)(1)(C); see also Henderson v.
Carlson, 812 F.2d 874, 877 (3d Cir. 1987).  This court may accept, reject, or modify,
in whole or in part, the findings or recommendations made by the magistrate judge.
The district court judge may also receive further evidence or recommit the matter to
the magistrate judge with instructions.  Id.

Defendants have filed motions to dismiss plaintiff's complaint pursuant to
Federal Rule of Civil Procedure 12(b)(6).  When a defendant files a motion pursuant
to Rule 12(b)(6), all well-pleaded allegations of the complaint must be viewed as true
and in the light most favorable to the non-movant to determine whether "under any
reasonable reading of the pleadings, the plaintiff may be entitled to relief."  Colburn
v. Upper Darby Township, 838 F.2d 663, 665-66 (3d Cir. 1988) (citing Estate of
Bailey by Oare v. County of York, 768 F.3d 503, 506 (3d Cir. 1985), (quoting

9

Helstoski v. Goldstein, 552 F.2d 564, 565 (3d Cir. 1977) (per curiam)).  The court

may also consider "matters of public record, orders, exhibits attached to the

complaint and items appearing in the record of the case."  Oshiver v. Levin,

Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citations

omitted).  The court does not have to accept legal conclusions or unwarranted

factual inferences.  See Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.,

450 F.3d 130, 133 (3d Cir. 2006) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d

902, 906 (3d Cir. 1997)).

        The federal rules require only that plaintiff provide "'a short and plain

statement of the claim showing that the pleader is entitled to relief,'" a standard

which "does not require 'detailed factual allegations,'" but a plaintiff must make "'a

showing, rather than a blanket assertion, of entitlement to relief' that rises 'above the

speculative level.'" McTernan v. City of York, 564 F.3d 636, 646 (3d Cir. 2009)

(quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007)).  The

"complaint must contain sufficient factual matter, accepted as true, to 'state a claim

to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)

(quoting Twombly, 550 U.S. at 570).  Such "facial plausibility" exists "when the

plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the conduct alleged."  Id.

**Discussion**

        The magistrate judge recommended dismissal of several of the plaintiffs'

claims.  The plaintiffs raise a number of objections.  The court will address each in turn.

### 1.  Unjust Enrichment Claims (Counts IX, XIII, XV and XVII)

The magistrate judge recommended that Counts IX, XIII, XV and XVII should be dismissed.  These counts allege unjust enrichment.  The magistrate judge concluded that plaintiff's unjust enrichment claims were based on contracts made between the parties.  Since unjust enrichment is based on a court implying a contract and plaintiffs have alleged contracts actually existed between the parties, plaintiffs have not made out a claim for unjust enrichment.  Plaintiffs argue that they are allowed to plead in the alternative and have done so here.  As such, they should be allowed to seek discovery on their unjust enrichment claims.

Plaintiffs allege that "Malinowski entered into the Cypress Lease, in large part, because of its proximity to the Weeks Fishing Camp and so that the Premises might be utilized during negotiations towards a deal relating to the Weeks Fishing Camp." (Amed. Complt. at ¶ 284).  Moreover, "RCMP and the Individual Defendants used the leased Premises for both business and personal purposes."  (Id. at ¶ 285).  Despite their use and enjoyment of this property, plaintiffs allege, "[t]he individual Defendants and RCMP have been unjustly enriched by and through the efforts of and their use of" the property.  (Id. at ¶ 292).

Pennsylvania courts have held that "'[u]njust enrichment' is essentially an equitable doctrine."  Styer v. Hugo, 619 A.2d 347, 350 (Pa. Super. Ct. 1993) (quoting

Wolf v. Wolf, 514 A.2d 901, 905 (Pa. Super. Ct. 1986)).  The doctrine "permits recovery where the claimant can show that a benefit was wrongly secured or passively received, and that it would be unconscionable for the party receiving the benefit to retain it without payment." State Farm Mut. Auto. Ins. Co. v. Jim Bowe & Sons, 539 A.2d 391, 393 (Pa. Super. Ct. 1991).  Under these circumstances, "the law implies a contract between the parties pursuant to which the plaintiff must be compensated for the benefits unjustly received by the defendant." Styer, 619 A.2d at 350.  The existence of such a "contract . . . requires that the defendant pay the plaintiff the value of the benefits conferred." Id.

       The court declines to adopt the report and recommendation on this point. While the court agrees that the existence of a contract between the parties would make a breach-of-contract claim, not an unjust enrichment claim, the appropriate means of recovery for plaintiffs, the complaint does not allege that the individual defendants or RPMC had a contract with the defendant.  As such, the mechanism of a contract-implied-in-law may be the only means by which plaintiffs may recover for the defendants' alleged misuse of their property.  Moreover, even though plaintiff has pled that a contract existed and sought recovery for breach of contract claims against Defendant Kretchnik, discovery may reveal that the contract which allegedly existed was invalid, making an unjust enrichment claim necessary for recovery.  The court will therefore decline to dismiss these claims at such an early stage in the litigation.  Discovery will certainly reveal whether breach of contract or unjust

enrichment is plaintiffs' more appropriate claim on this matter.  The plaintiffs'

objections on this matter will therefore be sustained, and the court will decline to

adopt the report and recommendation on this matter.  The court will deny the

motions to dismiss plaintiffs' unjust enrichment claims.

### 2.  Breach of Contract Claim Against Defendant Kretchik

Magistrate Judge Prince concluded that plaintiffs had not stated a claim for

breach of the Morelia agreement against Defendant Kretchik.  Though the

magistrate judge found that Defendant Kretchik had signed the contract, he

concluded that the Defendant signed only as the representative RCMP.  Kretchik's

actions did not create any individual liability.  The plaintiffs object to this conclusion,

arguing that they have alleged that Kretchik signed the agreement in his individual

capacity, as well as a representative of RCMP.  Moreover, Kretchik benefitted from

the agreement personally, and can therefore be liable.

The parties agree that Ohio law applies to the court's assessment of whether

a contract claim exists against Kretchik.  The issue identified by the magistrate judge

is whether Kretchnik individually was a party to the Morelia agreement.  In Ohio, "the

construction of a written contract is a matter of law."  Alternatives Unlimited-Special,

Inc. v. Ohio Dep't of Educ., 861 N.E. 2d 163, 170 (Ohio Ct. App. 2006).  "In

construing a contract, the court's primary objective is to ascertain and give effect to

the intent of the parties."  Id.  The court looks to the language of the contract to

determine this intent, and "[w]here the terms of the contract are clear and

unambiguous, a court may not in effect create a new contract by finding an intent not expressed by the parties in the clear language used within the contract."  Id.  If a "disparity" exists in the contract as to the identity of the signatories, a court is "to peruse the contract as a whole to ascertain whether the entirety of the contract resolves the apparent ambiguity."  Id. at 602.

The dispute here revolves around a contract the parties have denoted as the "Morelia Consulting Agreement."  The plaintiffs allege that on September 1, 2008 "Morelia on one hand and RCMP and Thomas Kretchik on the other did enter into a consulting agreement."  (Amend. Complt. at ¶ 116).  The agreement obligated Morelia to "'assist RCMP in the financing and development of Weeks Fish Camp into a viable commercial project.'"  (Id. at ¶ 118).  In exchange, the parties agreed that "RCMP and Kretchik shall pay to Morelia a fee of Ten Thousand Dollars ($10,000) per month for twenty four (24) months.  (Id.).  According to plaintiffs, "Kretchik did personally cause certain payments to be made to Morelia under the Morelia Consulting Agreements."  (Id. at ¶ 123).  Many of these payments were late, and "Kretchik" therefore allegedly breached the contract.  (Id. at ¶¶ 124, 126, 128).  As such, plaintiffs allege, "Kretchik, individually, owes Morelia a sum exceeding Ninety Thousand Dollars ($90,000) for the breach of the Morelia Consulting Agreement." (Id. at ¶ 130).

The parties executed the contract in question on September 1, 2008.  (See Exh. H. to Amend. Complt. (Doc. 16)).  The contract states that "[t]his Consulting

Agreement . . . is dated as of September 1, 2008 by and among RCMP Enterprises,

LLC ("RCMP"), a Pennsylvania limited liability company, Thomas Kretchik

("Kretchik"), and Morelia Consultants, LLC (Morelia)." (Id.).  One provision of the

agreement requires that "RCMP and Kretchik shall pay Moreilia Consultants, LLC a

fee of $10,000 per month for a period of 24 months." (Id. at ¶ 3).  Another provision

requires RCMP and Kretchik to pay Morelia a portion of any cash received in the

sale of the fish camp.  (Id. at ¶ 4).  Kretchik also "warrant[ed] and "represent[ed]" that

he was "duly and properly authorized and empowered to act on behalf of RCMP."

(Id. at ¶ 8).  The agreement also contains a signature line.  (Id., n.p.).  That signature

line contains the signature of Thomas Kretchik, as "Managing Member" of RCMP

Enterprises, LLC.  (Id.).  The agreement does not contain the signature of Kretchnik

on his own behalf.

The magistrate judge concluded that the fact that Kretchik did not sign in his

individual capacity "is strong evidence that his signature bound only RCMP to the

contract." (Report and Recommendation (Doc. 54) at 20).  Moreover, the magistrate

judge found, Kretchik did not benefit individually from the contract, and the benefits

of the contract inured solely to RCMP.  As such, Kretchik served solely as an agent

in the contract and should not be liable for any breach.

The court will sustain the plaintiffs' objections to this portion of the report and

recommendation.  Here, there is a disparity between the persons named as the

parties to the contract and the parties who actually signed the contract.  While

Kretchik is named as a party to the contract, his signature appears only as a

representative of RCMP.  Under those circumstances, the court is to look at the body

of the contract in an attempt to resolve this apparent ambiguity.  The contract, as the

magistrate judge noted, supplies a role for Kretchnik that in many ways could be

described as an agency one.  Kretchnik is to "cause to be paid" a sum to Morelia

after the sale of the fish camp.  (Contract at ¶ 4).  At the same time, however, the

contract provides that Kretchnik "shall pay" a monthly consulting fee to Morelia.  (Id.

at ¶ 3).  This appears to be a requirement that Kretchnik himself pay the fee.

Without more evidence the court cannot determine the intent of the parties.  The

court therefore finds that discovery is necessary to resolve this apparent ambiguity

and dismissing the claim would at this point be premature.  The court declines to

adopt the report and recommendation on this point and will deny the motions to

dismiss on this issue.

### 3.  Piercing the Corporate Veil

Magistrate Judge Prince concluded that plaintiffs' allegations were insufficient

for the court to ignore the corporate form and make the individual defendants liable

for the actions of RCMP.[2]  The court concluded that plaintiffs had not pled facts

---

[2]The magistrate judge found that the corporate veil should be pierced in relation to
United Penn.  The defendants do not object to this finding.  Therefore, in order to decide
whether to adopt the report and recommendation, the court must determine whether a
review of the record evidences plain error or manifest injustice.  See, e.g., Sullivan v.
Cuyler, 723 F.2d 1077, 1085 (3d Cir. 1983); FED. R. CIV. P. 72(b) 1983 Advisory Committee
Notes ("When no timely objection is filed, the court need only satisfy itself that there is no
clear error on the face of the record to accept the recommendation"); 28 U.S.C. § 636(b)(1).
The court finds neither plain error or manifest injustice, and will adopt the report and

sufficient to allege that RCMP was undercapitalized or was used to perpetuate a

fraud.  The court found, however, that plaintiffs had properly alleged that RCMP

improperly commingled personal and corporate accounts.  The plaintiffs object to the

court's finding that they have not adequately alleged that the corporate veil should

be pierced on undercapitalization and fraud theories.

        The magistrate judge found that the court should look to Pennsylvania law to

determine whether to pierce the corporate veil in relation to RCMP.  In Pennsylvania,

"a corporation . . . is normally regarded as a legal entity separate and distinct from its

shareholders."  Ashley v. Ahsley, 393 A.2d 637, 641 (Pa. 1978); see also, College

Watercolor Group, Inc. v. William H. Newbauer, Inc., 360 A.2d 200, 208 (Pa. 1976)

(finding that a corporation can be an independent entity even if there is only a single

shareholder).  As such, "there is a strong presumption in Pennsylvania against

piercing the corporate veil."  Lumax Indus. v. Aultman, 669 A.2d 893, 895 (Pa.

1995).   At the same time, "whenever one in control of a corporation uses that

control, or uses the corporate assets, to further his or her own personal interests, the

fiction of the separate corporate identity may properly be disregarded."  Ashley, 393

A.2d at 641.  Still, "[t]he corporate entity or personality will be disregarded only when

the entity [is] used to defeat public convenience, justify wrong, protect fraud or

defend crime."  Sams v. Redevelopment Authority of New Kensington, 244 A.2d 779,

781 (Pa. 1968).  Therefore, "[t]he alter ego doctrine is not applied by a test, but by

recommendation on this point.

17

consideration of relevant 'factors . . . to determine whether the debtor corporation is little more than a legal fiction.'" Trustees of Nat. Elevator Indus. Pension, Health Benefit & Educ. Funds v. Lutyk, 332 F.3d 188, 198 (3d Cir. 2003) (quoting Pearson v. Component Tech. Corp., 247 F.3d 471, 484-85 (3d Cir. 2001)).  Courts in Pennsylvania have found allegations of "failure to adhere to corporate formalities, substantial intertwining of personal and corporate affairs, undercapitalization, and the furthering of personal interests" sufficient to pierce the corporate veil. Commonwealth, Dep't of Environmental Resources v. Peggs Run, 423 A.2d 765, 768-69 (Pa. Commw. Ct. 1980)

Plaintiffs allege that "[a]t all times relevant hereto, RCMP was and, upon information and belief, remains undercapitalized."  (Amend. Complt. at ¶ 17).  They contend that RCMP's undercapitalization was "evidenced by the fact that Kretchik would personally pay certain obligations of RCMP, or cause RCMP to be funded only to the limited extent that it was able to pay certain limited obligations as they because [sic] due."[3]  (Id. at ¶ 18).   Moreover, plaintiffs contend, "Kretchik would personally pay certain obligations of RCMP when due, or cause RCMP to be funded only to the limited extent that was able to pay certain limited obligations as they because [sic] due."  (Id. at ¶ 225).  RCMP was not sufficiently "capitalized or funded" to allow the corporation "to operate as a separate and distinct going concern without

---

[3]The court assumes that the words "because" in the previous sentence and the following sentence were intended to read "became."

18

Kretchik's" intervention and "domination."  (Id. at ¶ 226).  This undercapitalization

was, plaintiffs allege, intentional, created by the defendants to facilitate their

"fraudulent, tortious and unlawful conduct under the company name and ostensibly

shielded by the corporate fiction."  (Id. at ¶ 227).

Plaintiffs contend that the magistrate judge erred in finding that they had not

stated a claim that would allow the corporate veil to be pierced because RCMP was

undercapitalized.  The court agrees.  The magistrate judge concluded that plaintiff

had not pled adequate facts to move the possibility of relief beyond a speculative

level.  Plaintiffs had not pled, "for example, that RCMP was capitalized to some

particular extent (say, $2 million in equity) with some amount of revenue (say, $1

million annually) but had liabilities and operating costs that consistently exceeded

the wherewithal of the corporation."  (Report and Recommendation (Doc. 54) at 31).

In Pennsylvania, however, "[t]he law . . . lacks substantial guidance as to what

exactly constitutes undercapitalization."  Fletcher-Harlee Corp. v. Szymanski, 936

A.2d 87, 100 n.17 (Pa. Super. Ct. 2007).  Courts have offered only a general

definition: a firm that does "not have enough capital to carry on its business."  Id. at

100.  At this preliminary stage, the allegations summarized above are sufficient to

state a claim that RCMP lacked sufficient capital to carry out its business.  Plaintiffs

have therefore stated a claim that is more than speculative and is plausible on its

face and are entitled to engage in discovery to determine whether RCMP's

capitalization was sufficient.  The court will sustain the plaintiffs' objection and

decline to adopt the report and recommendation on this count.  The motion to dismiss will be denied.[4]

### 4.  Participation Theory

The plaintiffs also object to the magistrate judge's finding that Count VIII of the complaint should be dismissed because plaintiffs failed to state a claim under the participation theory.  The magistrate judge concluded that plaintiffs had not alleged that the individual defendants had participated in any tortious activity engaged in by a limited liability company.  First, the magistrate judge concluded that plaintiffs had not properly alleged any tortious behavior by the defendants, and thus could not allege any tort liability under the participation theory.  Moreover, plaintiffs' allegations were far too conclusory to establish that the individual plaintiffs could be subject to liability on a participation theory.

Pennsylvania courts have articulated a theory of liability against corporate officers that stands separate from the veil-piercing theory discussed above.  Under

_____

[4]The magistrate judge found that plaintiffs had adequately alleged a commingling of corporate and personal funds sufficient to allow for piercing the corporate veil.  Plaintiffs argue that the magistrate judge should also have found that they have alleged the corporate veil could be pierced because defendants failed to observe corporate formalities.  Courts have found that "[n]ot every disregard of corporate formalities or failure to maintain corporate records justifies piercing the corporate veil.  That remedy is available only if it is shown that a corporation's affairs and personnel were manipulated to such an extent that it became nothing more than a sham used to disguise the alter ego's use of its assets for his own benefit in fraud of its creditors."  Kaplan v. First Options, 19 F.3d 1503, 1521 (3d Cir. 1994).  Plaintiffs allege that RCMP failed to observe corporate formalities by allowing Kertchik to make decisions unilaterally, without regard for the formal corporate governance procedures that applied to the company.  (Brief in Support of Objections (Doc. 62) at 11).  The court agrees that a failure to observe corporate formalities, if proved, could be grounds to pierce the corporate veil.  Plaintiffs may proceed on this theory as well.

the "participation theory" of liability, "the court imposes liability on the individual as an actor rather than as an owner.  Such liability is not predicated on a finding that the corporation is a sham and a mere alter ego of the individual corporate officer.  Instead, liability attaches where the record establishes the individual's participation in the tortious activity."  Wicks v. Milzoco Builders, Inc., 470 A.2d 86, 90 (Pa. 1983).  As such, the participation theory provides that "a corporate officer can be held liable for 'misfeasance,' i.e., the improper performance of an act, but not for 'mere nonfeasance,' i.e., the omission of an act which a person ought to do."  Brindley v. Woodland Village Restaurant, 652 A.2d 865, 868 (Pa. Super. Ct. 1995).

The court will sustain plaintiffs' objections on these grounds as well.  As explained above, the plaintiffs have stated claims for tort liability against the individual defendants.  This liability came in the course of acts performed for the company, and thus plaintiffs have stated a claim for liability on a participation theory.  The court will decline to adopt the report and recommendation on these grounds and deny the motions to dismiss this claim.

### 5.  Negligent and Fraudulent Misrepresentation

Plaintiffs also object to the magistrate judge's finding that their claims for negligent and fraudulent representation should be dismissed.  Plaintiffs argue that they have pled sufficient facts to establish both negligent and fraudulent misrepresentation.

In Pennsylvania, a plaintiff asserting negligent misrepresentation must allege:

"(1) a misrepresentation of a material fact; (2) the representor must either know of the misrepresentation, must make the misrepresentation without knowledge as to its truth or falsity, or must make the representation under circumstances in which he ought to have known of its falsity; (3) the representor must intend the representation to induce another to act on it; and (4) injury must result to the party acting in justifiable reliance on the misrepresentation."  <u>Weisblatt v. Minnesota Mutual Life Ins. Co.</u>, 4 F. Supp. 2d 371, 377 (E.D. Pa. 1998); <u>see also</u> <u>Gibbs v. Ernst</u>, 647 A. 2d 882, 890 (Pa. 1994) (finding that "negligent misrepresentation differs from intentional misrepresentation in that to commit the former, the speaker need not know his or her words are untrue, but must have failed to make reasonable investigation of the truth of those words.").  The magistrate judge concluded that plaintiffs had not stated a claim in this instance because plaintiffs did not allege that defendants supplied false information upon which plaintiffs relied in their business transactions.

The court will sustain plaintiffs' objections on this count.  Plaintiffs allege that the individual defendants represented to them that "United Penn was a validly existing company."  (Amend. Complt. at ¶ 75).  Further, they contend that this statement about United Penn was a "misrepresentation," and that they "rel[ied] on this misrepresentation and believe[d] United Penn to be a validly existing company."  (<u>Id.</u>).  Moreover, based on this misrepresentation, plaintiff Chirstopher Enterprize determined "to expend considerable efforts and . . . provide[d] assistance and guidance to United Penn in an effort to acquire commitments for financing in the

name of United Penn."  (Id. at ¶ 79).  The court finds this is an allegation of negligent

misrepresentation.  Plaintiffs contend that  material fact alleged here–the existence

of United Penn as a valid entity–was untrue, that defendants knew or should have

known that the representation was untrue, that they intended to have plaintiffs act on

that misrepresentation, and plaintiffs acted to their harm in reliance on that

misrepresentation.  The court will decline to adopt the report and recommendation

on this point and deny the motions to dismiss.

Plaintiffs also object to the magistrate judge's finding that plaintiff's claim for

fraudulent misrepresentation should be dismissed.  A tort action for intentional

misrepresentation or fraud requires: "(1) a representation; (2) which is material to the

transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as

to whether it is true or false; (4) with the intent of misleading another into relying on

it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was

proximately caused by the reliance."  Office of Disciplinary Counsel v. Anonymous

Attorney A, 714 A.2d 402, 407 n.8 (Pa. 1998); see also RESTAT. 2d of TORTS § 525

(stating that "[o]ne who fraudulently makes a misrepresentation of fact, opinion,

intention or law for the purpose of inducing another to act or to refrain from action in

reliance upon it, is subject to liability to the other in deceit for pecuniary loss caused

to him by his justifiable reliance upon the misrepresentation.").

The court will likewise sustain the objections to the magistrate judge's findings

here.  As explained above, the plaintiff has alleged that defendants knowingly

misrepresented the state of United Penn in an effort to induce plaintiffs to provide

services to them.  If plaintiffs could prove these facts they could prevail on their

fraudulent misrepresentation claim.  The court will therefore decline to adopt the

report and recommendation on this point and deny the motions to dismiss.

### 6.  Conspiracy Claims

Finally, the plaintiffs object to the magistrate judge's finding that the

conspiracy claims against the defendants should be dismissed.  The magistrate

judge concluded that plaintiffs could not make out a civil conspiracy claim because

the defendants were all agents of a single principal.  The intra-corporate conspiracy

doctrine bars conspiracy claims among agents of a single entity, and thus plaintiffs

cannot bring those claims that arose for their work for RCMP or for United Penn

while the company still existed.  Moreover, none of the defendants' alleged

conspiratorial actions were taken in their individual capacities.

In Pennsylvania, "[t]o prove a civil conspiracy, it must be shown that two or

more persons combined or agreed with intent to do an unlawful act or to do an

otherwise lawful act by unlawful means."  Thompson Coal Co. v. Pike Coal Co., 412

A.2d 466, 472 (Pa. 1979).  Further, a plaintiff must have "[p]roof of malice, i.e., an

intent to injure," and the "unlawful intent must be absent justification."  Id.; see also

Skipworth v. Lead Industries Assoc., Inc., 690 A.2d 169, 174 (Pa. 1997) (holding that

to prevail on a civil conspiracy claim a plaintiff must show that defendants "acted in

concert to commit an unlawful act or do a lawful act by unlawful means, and that

they acted with malice.").

The court has concluded that plaintiffs have raised allegations sufficient to pierce the corporate veil.  As such, the intra-corporate conspiracy doctrine does not apply to the case.  See, e.g., Gen. Refractories Co. v. Fireman's Fund Ins. Co., 337 F.3d 297, 313 (3d Cir. 2003) (under the "intracorporate conspiracy doctrine" "an entity cannot conspire with one who acts as its agent.").  Since the court has determined that plaintiffs have properly alleged that the corporate veil should be pierced, the individual defendants may be liable for corporate actions and any distinction created by the intra-corporate doctrine does not exist.  Moreover, plaintiffs have alleged that the defendants engaged in fraudulent and negligent misrepresentation, as well as a number of violations of the RICO act, and that the individual defendants acted in combination and as part of a scheme to commit these violations.  Plaintiffs have therefore stated a claim for civil conspiracy.  The court will therefore sustain the plaintiffs' objections on this matter.  The court will decline to adopt the report and recommendation and deny the motions to dismiss on these grounds.

**Conclusion**

For the reasons stated above, the court will sustain the plaintiff's objections to the report and recommendation.  The court will not adopt the report and recommendation, which proposed that the court grant in part and deny in part defendants' motion to dismiss.  The court will instead deny the motions to dismiss

and remand the case to the magistrate judge for further proceedings.[5]  An

appropriate order follows.

---

[5]The case will be remanded to Magistrate Judge Thomas M. Blewitt, who is now assigned to the case.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MORELIA CONSULTANTS, LLC;** | : | **No. 3:10cv432** |
| **THE CHRISTOPHER ENTERPRIZE,** | : | |
| **LLC;** | : | **(Judge Munley)** |
| **CRH NAPLES DEVELOPMENT, LLC;** | : | |
| **and** | : | **(Magistrate Judge Blewitt)** |
| **CHRISTOPHER HILDEBRANT,** | : | |
| **Plaintiffs** | : | |
| **v.** | : | |
| | : | |
| **RCMP ENTERPRISES, LLC;** | : | |
| **UNITED PENN INVESTMENT GROUP,** | : | |
| **LLC;** | : | |
| **THOMAS KRETCHIK;** | : | |
| **CHRISTOPHER M. WARTELLA;** | : | |
| **STANLEY MALINOWSKI, a/k/a Rick** | : | |
| **Malinkowski;** | : | |
| **MICAHEL OLENGINSKI; and** | : | |
| **JEFFREY N. WOYTOWICH,** | : | |
| **Defendants** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

**ORDER**

**AND NOW,** to wit, this 9th day of September 2011, the plaintiffs' objections

(Doc. 61) to the report and recommendation of Magistrate Judge William T. Prince

(doc. 54) are hereby **SUSTAINED**.  The report and recommendation is **NOT**

**ADOPTED**.  The motions to dismiss by Defendants RCMP Enterprises and United

Penn Investment Group (Doc. 19), Defendant Thomas Kretchik (Doc. 21) and

Michael Olenginski and Jeffrey Wytomowich (Doc. 22) are hereby **DENIED**.  The

case is hereby **REMANDED** to Magistrate Judge Thomas M. Blewitt for further

proceedings.

 

 

                                                          **BY THE COURT:**

 

                                                          <u>**s/ James M. Munley**</u>
                                                          **JUDGE JAMES M. MUNLEY**
                                                          **UNITED STATES DISTRICT COURT**